**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00990-NYW-SBP

BERNARD BUTTS, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

STATE OF COLORADO, and
JENA GRISWOLD, in her official capacity,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the Motion to Dismiss (or "Motion") filed on June 5, 2025. [Doc. 18]. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Dismiss is respectfully **GRANTED**.

## BACKGROUND

The Court draws the following facts from the Class Action Complaint, [Doc. 1], and takes them as true when ruling on the Motion to Dismiss. In 2023, Plaintiff Bernard Butts ("Plaintiff") invested $20,963.96 in a company called PBGME. [*Id.* at ¶¶ 2, 9]. When he later tried to withdraw his investment, PBGME demanded Plaintiff pay an additional $10,500 to release his funds. [*Id.* at ¶ 20]. Plaintiff refused, "resulting in the total loss of his $20,963.96." [*Id.*]. He later learned that PBGME is not a real company and is instead a component of "a 'pig butchering' scam involving fictitious accounts and deceptive tactics." [*Id.* at ¶ 17].

The State of Colorado and the Colorado Secretary of State (together, "Defendants") "maintain a searchable public database listing registered entities as valid and operational" that "impl[ies] legitimacy [of the entities]."  [*Id.* at ¶ 31]; *see also* [*id.* at ¶ 50 ("The State's database implies legitimacy.")].  But according to Plaintiff, Defendants employ a "deliberate non-verification policy" in which they "accept[] [corporate] filings without verifying their accuracy" and post "all publicly available business records . . . online without scrutiny."  [*Id.* at ¶¶ 29–30 (quotation omitted)].  Defendants "register[ed] PBGME" without "any verification of its bona fides."  [*Id.* at ¶¶ 1, 13].

Plaintiff alleges that Defendants' non-verification policy "misled [him] and others into investing in a fraudulent . . . cryptocurrency scam" because he relied on PBGME's "Colorado registration" and its listing on the Secretary of State's public database in deciding to invest in the company.  [*Id.* at ¶¶ 1, 9, 18].  Specifically, he alleges that "Defendants' inclusion of PBGME in the database constituted a negligent misrepresentation of [PBGME's] legitimacy," and by "listing PBGME as a valid entity, Defendants used their authority to establish a relationship of reliance with the public, . . . creating an opportunity for PBGME's fraud that would not have existed absent the [non-verification] policy's imprimatur of legitimacy."  [*Id.* at ¶¶ 17, 39].

Plaintiff initiated this action on March 27, 2025, raising claims in his own name and on behalf of the following proposed class:  "All persons who suffered financial loss from cryptocurrency investments through entities registered in Colorado without verification from August 8, 2020, to the present."  [*Id.* at ¶ 42].  He asserts seven claims:  (1) a negligent misrepresentation claim against the State of Colorado ("Claim One"), [*id.* at ¶¶ 48–56]; (2) a negligence claim against the State of Colorado ("Claim Two"), [*id.* at

2

¶¶ 57–64]; (3) a claim under the Colorado Consumer Protection Act ("CCPA") against the State of Colorado ("Claim Three"), [*id.* at ¶¶ 65–69]; (4) a Fourteenth Amendment due process claim against Secretary of State Jena Griswold in her official capacity ("Claim Four"), [*id.* at ¶¶ 70–78]; (5) a claim under the State Administrative Procedure Act against Secretary Griswold in her official capacity ("Claim Five"), [*id.* at ¶¶ 79–82]; (6) a claim seeking a declaratory judgment ("Claim Six"), [*id.* at ¶¶ 83–87]; and a claim under the Commodity Exchange Act ("CEA") ("Claim Seven"), [*id.* at ¶¶ 88–91].

Defendants now move to dismiss all of Plaintiff's claims under Rules 12(b)(1) and 12(b)(6).  [Doc. 18].  First, they argue that all of Plaintiff's claims should be dismissed because he lacks standing to bring them.  [*Id.* at 5–10].  Then, they raise a number of claim-specific arguments as to why each of Plaintiff's claims should not proceed.  [*Id.* at 10–25].  The Motion is fully briefed, [Doc. 22; Doc. 27], and ripe for resolution.

**LEGAL STANDARD**

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim.  Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent

3

that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quotation omitted).

A motion under Rule 12(b)(1) can raise either a facial attack or a factual attack on a court's subject matter jurisdiction. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack assumes the plaintiff's allegations are true and challenges their sufficiency to establish jurisdiction; a factual attack goes beyond the complaint's allegations and "adduces evidence to contest jurisdiction." *Id.*

**ANALYSIS**

**I.     Standing**

Article III of the United States Constitution limits the jurisdiction of the federal courts to review only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. And "[t]here is no case or controversy unless the plaintiff has standing." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1073–74 (10th Cir. 2024). Constitutional standing is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original)).

As the party invoking the Court's jurisdiction, Plaintiff bears the burden to demonstrate standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). Importantly, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

4

Defendants argue that Plaintiff's Complaint fails to allege facts meeting the traceability and redressability requirements for any of his claims. [Doc. 18 at 5].[1] They contend that Plaintiff "lacks standing for all claims because any injury alleged is neither traceable to the [non-verification policy] he purports to challenge nor redressable by the prospective relief he seeks." [*Id.*]. They also assert that to the extent Plaintiff seeks prospective relief, he fails to adequately allege an injury in fact. [*Id.* at 9].

The Court evaluates causation (or traceability) first. "The principle of causation for constitutional standing requires a plaintiff's injury to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Bronson v. Swensen*, 500 F.3d 1099, 1109 (10th Cir. 2007) (emphasis omitted) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)). Here, Defendants assert that any injury Plaintiff alleges is not fairly traceable to the alleged "non-verification policy" because Colorado statutes govern the Secretary of State's corporate filing process. [Doc. 18 at 6]. Specifically, under Colo. Rev. Stat. § 7-90-306, "[i]f a document delivered to the secretary of state for filing pursuant to this part 3 complies with the requirements of section 7-90-301, the secretary of state *shall* file it." Colo. Rev. Stat. § 7-90-306(1) (emphasis added). This duty to file documents "is ministerial," and the filing of a document does not:

(a) Affect the validity or invalidity of the document in whole or in part;

---

[1] Neither Party addresses whether Defendants raise a facial challenge or a factual challenge to the Court's subject matter jurisdiction. The Court construes the Motion as asserting a facial attack because Defendants do not rely on evidence outside of the pleadings and do not expressly dispute Plaintiffs' allegations. *See Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581-PAB, 2022 WL 1266612, at *2 (D. Colo. Apr. 28, 2022); *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022) ("Because the Loopers have not adduced any evidence outside the pleadings to contest jurisdiction, we address this issue as a facial challenge.").

(b)  Relate to the correctness or incorrectness of information contained in the document; or

(c)  Create a presumption that the document is valid or invalid or that information contained in the document is correct or incorrect.

§ 7-90-306(4).  Indeed, the Secretary of State "has no duty to determine whether the document complies with any or all requirements of the law."  § 7-90-306(1).

Defendants argue that because the Secretary of State does not have authority to exceed the duties assigned by statute, "including by imposing the additional verification requirements" that Plaintiff seeks, any injury claimed by Plaintiff is "not traceable to a 'policy' which the Secretary has any authority to alter."  [Doc. 18 at 6–7].[2]  Plaintiff disagrees.  He argues that his injuries are "traceable to the [Secretary of State's] non-verification policy and discretionary failure to utilize its powers granted in Part 4 [of the Colorado Corporations and Associations Act[3]], resulting in listing PBGME as a legitimate Colorado corporate citizen, inducing reliance."  [Doc. 22 at 3].

The Court is respectfully unpersuaded that Defendants' argument presents a traceability issue.  Plaintiff's Complaint acknowledges the applicable statutory scheme, alleging that "[t]he State of Colorado, through its Secretary of State, operates a corporate registration system under C.R.S. Title 7, Article 90, which deliberately accepts filings without verifying their accuracy."  [Doc. 1 at ¶ 29].  He alleges that business records "are

---

[2] Defendants also argue that Plaintiff does not allege any facts plausibly establishing "that any injury was caused by a purported 'misrepresentation' by the Secretary's database as opposed to 'the independent action of a third party'—in this case, PBGME."  [Doc. 18 at 7].  However, the Court finds that Plaintiff does allege an injury based on the purported misrepresentation and his reliance thereon.  *See* [Doc. 1 at ¶¶ 18, 31, 39, 53–54].

[3] The statute Plaintiff relies upon provides that "[t]he secretary of state has all powers reasonably necessary to perform the duties required by law."  Colo. Rev. Stat. § 7-90-401.

posted online without scrutiny," amounting to a "deliberate non-verification policy." [*Id.* at ¶¶ 30–32].

"[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021). Plaintiff does so here by alleging that Defendants implied legitimacy by listed PBGME on the Secretary of State's public database and the listing created an opportunity for PBGME's fraud that would not have existed absent the "imprimatur of legitimacy." *See, e.g.*, [Doc. 1 at ¶¶ 18, 31, 39, 53–54]. The existence of a statute mandating the filing of business records if certain conditions are met does not, in the Court's view, sever the causal connection between Plaintiff's purported injuries and Defendants' actions, even if those actions are, as Defendants contend, non-discretionary. The "fairly traceable" requirement does not require Plaintiff to establish that Defendant's conduct is the proximate cause or the "very last step in the chain of causation." *Santa Fe All. for Pub. Health & Safety*, 993 F.3d at 814 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

Alternatively, Defendants argue that Plaintiff fails to allege facts establishing "redressability for all claims." [Doc. 18 at 5 (emphasis omitted)]. However, their redressability argument appears to be limited to Plaintiff's request for prospective relief.[4]

---

[4] Plaintiff seeks "[a] declaration that Defendants' non-verification policy violates federal due process, C.R.S. § 6-1-105, C.R.S. § 24-4-106, 7 U.S.C. § 25, and public policy" and "[a] permanent injunction against Secretary Griswold, mandating verification of corporate filings to comply with the CEA, due process, and state law and to eliminate the state-created danger." [Doc. 1 at 16–17]. The request for injunctive relief is prospective because it asks for a Court order limiting Secretary Griswold's future activity. Further, "a declaratory judgment is generally prospective relief." *Winsness v. Yocom*, 433 F.3d 727,

*See* [*id.* ("[Plaintiff] lacks standing for all claims because any injury alleged is neither traceable to the 'policy' he purports to challenge nor redressable by the prospective relief he seeks."); *id.* at 7 ("[Plaintiff] cannot demonstrate that prospective relief, including an injunction against the purported policy, would redress any injuries.")]. This argument therefore overlaps in scope with Defendants' contention that Plaintiff "has failed to allege future injury for purposes of prospective relief." *See* [*id.* at 9 (emphasis omitted)]. The Court focuses on this injury-in-fact argument.

To establish an injury in fact, a plaintiff must allege facts showing that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see also K.A. v. Barnes*, 134 F.4th 1067, 1075–76 (10th Cir. 2025) (plaintiff seeking prospective declaratory judgment must allege an anticipated injury). "An alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Susan B. Anthony List*, 573 U.S. at 158). "Allegations of possible future injury do not satisfy the requirements of" Article III. *Nova Health Sys.*, 416 F.3d at 1155. And here, Plaintiff "must allege . . .

---

735 (10th Cir. 2006) (quotation omitted). The Tenth Circuit "treat[s] declaratory relief as retrospective only to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." *Id.* (quotation omitted). As explained below, Plaintiff's § 1983 claim for money damages is barred by the Eleventh Amendment, *see infra* Section IV, so there is no intertwined constitutional claim for money damages here.

that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s] and which [he] purport[s] to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Defendants assert that the Complaint is "simply devoid of allegations of future injury," so Plaintiff has not met his burden to establish standing to seek prospective injunctive relief. [Doc. 18 at 9]. Plaintiff disputes this, arguing that his "Complaint addresses possible future injury, as ongoing risks from unverified filings are implied by nationwide scam allegations . . ., supporting prospective relief." [Doc. 22 at 8 (citing Doc. 1 at ¶¶ 50–53)]. He goes on to argue that his allegations

> establish a credible threat of future harm to Plaintiff and the class, as unverified corporate filings continue to enable fraudulent entities to exploit the "in Good Standing" designation. If one scam artist is leveraging Colorado's corporate registration apparatus knowing that no one in Denver checks the bonafides of anything that is filed, rest assured that other scam artists, whether in California or Cambodia, are doing the same and will continue to do so without relief from this Court.

[*Id.*].[5]

The Court is unpersuaded by Plaintiff's arguments. The allegations Plaintiff references do not "address[] possible future injury," as he suggests. Rather, those four paragraphs simply allege that the State of Colorado had a duty to prevent the harm alleged in this lawsuit, that the State knew or should have known that "this would induce

---

[5] Plaintiff also argues that his "Complaint alleges that the non-verification policy of [the Secretary of State] has facilitated widespread fraud, with FinCEN reporting $3.7 billion in 2022 scam losses and the FBI noting $10 billion in 2023 losses nationwide, thus implicating Colorado's corporate registration system in part." [Doc. 22 at 8]. This assertion is not supported by a citation to allegations in the Complaint, and indeed, these allegations do not appear in the Complaint. *See* [Doc. 1]. Plaintiff cannot amend his Complaint by asserting new factual allegations in his Response, *see Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1199 n.3 (D. Colo. 2015), and the Court disregards these new allegations.

reliance," and that Plaintiff relied on Defendants' misrepresentation when he invested in PBGME. [Doc. 1 at ¶¶ 50–53]. These allegations of past conduct do not demonstrate a "sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381.

To demonstrate standing, Plaintiff must allege facts establishing "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Critically, Plaintiff does not allege that he intends to again rely on the Secretary of State's public database to determine whether to invest in a company. *See generally* [Doc. 1]. Instead, Plaintiff asks the Court to simply assume that he will repeat his past conduct, that he will unwittingly invest in a fraudulent company, and that he will lose money as a result. But the Supreme Court has cautioned against endorsing "standing theories that rest on speculation about the decisions of independent actors," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013), and the Court finds Plaintiff's speculative theory of injury insufficient here, *see Lyons*, 461 U.S. at 105 (plaintiff's past injuries from police officers did not establish injury in fact for prospective relief because allegations of past harm did not "establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part"); *cf. Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211–12 (10th Cir. 2014) (plaintiff had standing to seek prospective relief under the ADA because she articulated "a concrete, present plan to return to" the defendant's location).

In summary, Plaintiff has not alleged facts plausibly establishing a "likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381. He thus lacks standing to seek prospective injunctive and declaratory relief. *Nova Health Sys.*, 416 F.3d at 1155; *K. A.*

*v. Barnes*, 134 F.4th 1067, 1075–76 (10th Cir. 2025).  The Motion to Dismiss is therefore **GRANTED** to the extent it seeks dismissal of Plaintiff's claims seeking prospective injunctive and declaratory relief, *see* [Doc. 1 at 16–17], and those claims are **DISMISSED without prejudice** for lack of standing, *see Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (dismissal for lack of standing must be without prejudice).  The Court's claim-specific analysis is limited to the remaining portions of Plaintiff's claims.

## II.    Negligent Misrepresentation and Negligence Claims:  Claims One and Two

Next, Defendants argue that Plaintiff's negligent misrepresentation and negligence claims, which are both asserted against the State of Colorado, are barred by the Colorado Governmental Immunity Act ("CGIA").  [Doc. 18 at 10].

"Under the CGIA, sovereign immunity generally bars any action against a public entity for injuries that lie in tort or could lie in tort."  *Smokebrush Found. v. City of Colorado Springs*, 410 P.3d 1236, 1240 (Colo. 2018); *see also* Colo. Rev. Stat. § 24-10-108 ("[S]overeign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.").  However, the "CGIA allows injured persons to sue governmental entities in certain specific circumstances" where the government's immunity has been waived.  *City of Colorado Springs v. Powell*, 48 P.3d 561, 563 (Colo. 2002).  Sovereign immunity acts as a bar to suit, so it presents a jurisdictional issue.  *Smokebrush*, 410 P.3d at 1240.  "And because the injured plaintiff must establish that the court has jurisdiction, the plaintiff bears the burden of demonstrating that immunity has been waived."  *Id.*

Plaintiff contends that Defendants' CGIA immunity argument "only applies to the claims against Colorado, as validity of [his] individual-capacity claims against Secretary Griswold [is] explicitly recognized." [Doc. 22 at 9]. But Plaintiff does not sue Secretary Griswold in her individual capacity; he sues her only in her official capacity. *See* [Doc. 1 at 1; *id.* at ¶ 11]. He appears to recognize as much, acknowledging that "[w]hile [Secretary Griswold is] named officially . . ., the allegations support individual liability." [Doc. 22 at 10]. But Plaintiff is represented by counsel and is thus not entitled to a liberal construction of his filings, *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007), and he cannot amend his Complaint to assert individual-capacity claims against Secretary Griswold through his response brief, *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1199 n.3 (D. Colo. 2015). Further, Claims One and Two name only the State of Colorado as a Defendant—*not* Secretary Griswold. *See* [Doc. 1 at 10–12].

The Court rejects Plaintiff's attempt to add claims against Secretary Griswold (and recharacterize his existing claims against Secretary Griswold) and will limit its analysis to the claims asserted in the Complaint. And because Plaintiff's arguments against CGIA immunity are limited to non-existent individual capacity claims, [Doc. 22 at 9–10], and because it is Plaintiff's burden to establish a CGIA immunity waiver, *see Smokebrush*, 410 P.3d at 1240, the Court finds that Plaintiff has not met his burden here. Accordingly, the Motion to Dismiss is **GRANTED** with respect to Claims One and Two, and those claims are **DISMISSED without prejudice** based on sovereign immunity. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[D]ismissal on sovereign immunity grounds . . . must be without prejudice.").

**III.    Colorado Consumer Protection Act Claim:  Claim Three**

Claim Three is asserted under the Colorado Consumer Protection Act.  [Doc. 1 at 13].  Defendants seek dismissal of Plaintiff's CCPA claim on the grounds that (1) it is barred by the CGIA, and (2) Plaintiff fails to state a claim under the CCPA.  [Doc. 18 at 12–14].

"The Colorado Consumer Protection Act . . . is a broad remedial statute 'intended to deter and punish deceptive trade practices committed by businesses in dealing with the public.'"  *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 919 (D. Colo. 2021) (quoting *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D. Colo. 2002)), *aff'd*, 36 F.4th 1238 (10th Cir. 2022).  Under the CCPA, a person engages in a deceptive trade practice by, inter alia, "knowingly or recklessly mak[ing] . . . a false representation as to the sponsorship, approval, status, affiliation, or connection of a person" with certain goods or services. Colo. Rev. Stat. § 6-1-105(1)(e).

But as mentioned above, the Court lacks subject matter jurisdiction over "all claims for injury that lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant."  Colo. Rev. Stat. § 24-10-106(1); *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n, Inc.*, 551 P.3d 655, 658 (Colo. 2024).  To determine whether a claim is barred by the CGIA, courts consider "the nature of the injury underlying the claims and the relief sought."  *City of Aspen*, 551 P.3d at 659. "When the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA."

*Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008). "In resolving whether a claim is barred by the CGIA, the question is not how the claim is characterized, but whether the claim is a tort claim or could be a tort claim." *Arabasz v. Schwartzberg*, 943 P.2d 463, 465 (Colo. App. 1996).

Defendant asserts that Plaintiff's CCPA claim is barred by the CGIA because it "is based on the same allegedly tortious conduct supporting his misrepresentation and negligence claims." [Doc. 18 at 13]. Plaintiff responds that his CCPA claim is "necessarily grounded in statutory duties under C.R.S. § 6-1-105 intended to prevent deceptive trade practices." [Doc. 22 at 11]. He asserts, without supporting legal authority, that "CCPA claims enforce consumer protection, not liability for tortious injuries, thus exempting them from CGIA." [*Id.*].[6]

The Court respectfully disagrees with Plaintiff. The Court could locate no legal authority demonstrating that CCPA claims are "exempt[]" from the CGIA's immunity provisions. Examining the nature of the injury alleged and the relief sought, *City of Aspen*, 551 P.3d at 659, the Court concludes that Plaintiff's CCPA claim is based on "conduct that is tortious in nature" and, therefore, the CCPA claim "lies in tort or could lie in tort," *Robinson*, 179 P.3d at 1003.

Specifically, Plaintiff consistently alleges that he was injured by the Secretary of State's alleged negligent failure to verify the accuracy of PBGME's corporate filing. *See, e.g.*, [Doc. 1 at ¶¶ 29–30, 35]. Plaintiff's CCPA claim is not based on separate wrongful

---

[6] In his Complaint, Plaintiff alleges that "CGIA immunity is waived under C.R.S. § 24-10-106(1)(a) for operation of a public entity." [Doc. 1 at ¶ 69]. However, Plaintiff does not make this argument in his Response, *see* [Doc. 22 at 11–12], so the Court does not consider it.

conduct or a separate alleged injury; rather, the CCPA claim relies on allegations that are essentially identical to those underlying his negligence and negligent misrepresentation claims. *Compare, e.g.*, [*id.* at ¶¶ 65, 68 ("The State engaged in an unfair and deceptive trade practice under C.R.S. § 6-1-105(1)(e) by listing PBGME as a valid entity *without verification*, falsely implying legitimacy. . . .  Plaintiff . . . relied on this deception, losing $20,963.96." (emphasis added))], *with* [*id.* at ¶ 48 ("The State listed PBGME in its public database as a registered entity, implying it was a valid company.  This was a false representation, as PBGME was fraudulent."); *id.* at ¶ 54 ("[Plaintiff's] reliance [on the alleged misrepresentation] caused Plaintiff's $20,963.96 loss."); *id.* at ¶ 62 (alleging that the State of Colorado "breached [a] duty by failing to verify PGBME's information")].  In fact, Plaintiff invokes the CCPA in his negligent misrepresentation and negligence claims to identify the duties the State allegedly breached.  *See* [*id.* at ¶ 52 ("The State knew or should have known this would induce reliance, per C.R.S. § 6-1-103 (CCPA's policy against deception) and common law."); *id.* at ¶ 57(b) ("The Colorado Consumer Protection Act reflects a duty to protect consumers from deceptive practices and the non-verification policy constitutes an 'unfair or deceptive trade practice' under C.R.S. § 6-1-105, aiding PBGME's fraud.")].

Because Plaintiff's injury arose out of the State of Colorado's alleged tortious misrepresentation of PBGME as a legitimate business, the Court concludes that his CCPA claim lies in tort or could lie in tort and is therefore barred by the CGIA.  *See Robinson*, 179 P.3d at 1001 (concluding that claims "aris[ing] out of the alleged misrepresentation of certain facts by" the Colorado State Lottery Division were barred by the CGIA).  The Court thus lacks subject matter jurisdiction over this claim.  *City of Aspen*,

551 P.3d at 658.   The Motion to Dismiss is **GRANTED** as to Claim Three, which is **DISMISSED without prejudice**.

## IV.    Fourteenth Amendment Claim:  Claim Four

Plaintiff asserts a claim under 42 U.S.C. § 1983 against Secretary Griswold in her official capacity, arguing that the Secretary's "deliberate non-verification policy . . . violat[es] the Fourteenth Amendment by creat[ing] a state-induced danger."  [Doc. 1 at ¶ 70].   Defendants argue that this claim is barred by Eleventh Amendment immunity. [Doc. 18 at 15].

"The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state."  *Elephant Butte Irr. Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998).  There are three exceptions to this general rule:  (1) a state may consent to be sued in federal court; (2) Congress may abrogate a state's sovereign immunity through legislation; and (3) under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

Defendants' argument is two-fold.  They first assert that, to the extent Plaintiff seeks money damages, his claim is barred outright by the Eleventh Amendment.  [Doc. 18 at 15–16]; *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1213 (10th Cir. 2022) ("Eleventh Amendment sovereign immunity bars suits for money damages against states, state agencies, and state officers in their official capacities.").  Second, they argue that Plaintiff cannot invoke the *Ex parte Young* exception to Eleventh Amendment immunity

because (1) he "lacks standing to seek prospective relief of any kind," (2) he "fails to plausibly allege an ongoing violation of federal law," and (3) any financial injury to Plaintiff is "'past harm, rather than an ongoing violation of federal law." [Doc. 18 at 16–18].

In his Response, Plaintiff argues first that a claim for damages against Secretary Griswold in her individual capacity is "permissible." [Doc. 22 at 15]. But as explained above, *supra* Section II, no such claims exist in this case, and the Court will disregard this argument. Because Plaintiff cannot recover money damages against Secretary Griswold in her official capacity, this portion of Claim Four is barred by Eleventh Amendment immunity. *Chilcoat*, 41 F.4th at 1213.

Alternatively, Plaintiff claims that the *Ex parte Young* exception applies to his request for prospective *injunctive* relief. *See* [Doc. 22 at 15 (stating that *Ex parte Young* "support[s] injunctive relief"); *id* at 16 ("*Ex parte Young* Applies to Prospective Injunctive Relief" (emphasis omitted))]. He contends that he adequately alleges an ongoing violation of federal law because the non-verification policy "violates due process by creating a state-induced danger" and "may violate procedural due process," as well. [*Id.* at 16–17]. He also argues that he has standing to seek prospective relief because his Complaint "alleges plausibly that an active investor remains at risk of relying on the [Secretary of State's] database in connection with future investments, facing ongoing harm from unverified listings under the non-verification policy," [*id.* at 18 (citing Doc. 1 at ¶ 12)], and "FinCEN and FBI reports confirm systemic fraud risks from financial scams . . ., establishing a real and immediate threat," [*id.* at (citing Doc. 1 at ¶¶ 35–38)].[7]

---

[7] Plaintiff's arguments substantially overstate the contents of the Complaint and the specific paragraphs he cites in support. For example, paragraph 12, which he says "plausibly alleges that an active investor remains at risk of relying on the [Secretary of

The Court has already concluded that Plaintiff lacks standing to seek prospective injunctive or declaratory relief, *supra* Section I, and need not repeat its analysis.  Because Plaintiff lacks standing, the Court need not discuss application of the *Ex parte Young* exception to sovereign immunity.  The Motion to Dismiss is **GRANTED** as to Claim Four, and Claim Four is **DISMISSED without prejudice**.  *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (dismissal pursuant to the Eleventh Amendment must be without prejudice).

## V.    State Administrative Procedure Act Claim:  Claim Five

Claim Five is asserted under the State Administrative Procedure Act.  [Doc. 1 at 15]; *see also* Colo. Rev. Stat. §§ 24-4-101, 24-4-106.  The State Administrative Procedure Act permits judicial review of a "final agency action" and allows a court to set aside an agency action if it was arbitrary or capricious or in excess of the agency's statutory authority.  § 24-4-106(7)(b).  Plaintiff asserts that "[t]he Secretary's non-verification policy under C.R.S. Title 7, Article 90, is arbitrary and capricious, lack[s] rational basis given known fraud risks," and "exceeds statutory authority."  [Doc. 1 at ¶¶ 79–80].  He "seeks judicial review and an injunction to compel a verification policy consistent with administrative law standards."  [*Id.* at ¶ 82].

To the extent Plaintiff seeks prospective injunctive or declaratory relief in this claim, the Court has already dismissed this portion of the claim for lack of standing.  *See supra* Section I.  And although Plaintiff seeks "judicial review" under the state APA, [Doc. 1 at

---

State's] database in connection with future investments," [Doc. 22 at 18], actually just identifies "[a]ll persons who suffered financial loss in cryptocurrency investments through fraudulent entities that were registered in Colorado without verification from August 8, 2020, to the present" as the proposed class, *see* [Doc. 1 at ¶ 12].  Similarly, there is no mention whatsoever of "FBI reports" in the Complaint.  *See* [*id.*].

¶ 82], "judicial review" is not a type of substantive relief; rather, judicial review is simply the vehicle through which a court may "hold unlawful and set aside [an] agency action" that violates the state APA, *see* § 24-4-106(7)(b).  Notably, Plaintiff does not expressly ask for vacatur of any agency action or ask that the Court "set aside" any action; rather, his request for relief is limited to injunctive relief that the Court has already concluded he lacks standing to seek.  *See* [Doc. 1 at ¶ 82; *id.* at 17].

Although Plaintiff is not entitled to a liberal construction of his pleading, *Mann*, 477 F.3d at1148 n.4, even if Plaintiff's Complaint could be reasonably construed to seek vacatur of some agency action, this Court is not convinced that he has adequately alleged a "final agency action" under the statute.  "Under the APA, only final agency actions are subject to judicial review."  *Coop v. Colo. State Bd. of Registered Psychotherapists*, No. 16CA1539, 2017 WL 11932362, at *2 (Colo. App. Aug. 24, 2017).  The statute defines an agency "action" to include "the whole or any part of any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  Colo. Rev. Stat. § 24-4-102(1).  And "[t]o be final, agency action must (1) mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an action by which rights or obligations have been determined or from which legal consequences will flow."  *Doe 1 v. Colo. Dep't of Pub. Health & Env't*, 451 P.3d 851, 858–59 (Colo. 2019) (quotation omitted).  If there is no final agency action, then this Court lacks jurisdiction over Plaintiff's claim.  *See Chittenden v. Colo. Bd. of Soc. Work Examiners*, 292 P.3d 1138, 1144 (Colo. App. 2012)

19

(because challenged action was not a final agency action, appellate court lacked jurisdiction over appeal); *Coop*, 2017 WL 11932362, at *3 (same).[8]

Plaintiff does not allege that the non-verification policy constitutes a final agency action or any facts establishing that the policy is the consummation of the Colorado Department of State's decision-making process. [Doc. 1]. In fact, he consistently alleges that the non-verification policy is employed "under C.R.S. Title 7, Article 90," *see* [*id.* at ¶¶ 11, 29, 70, 79, 89], which suggests that the policy is the result of the Colorado legislature's passing of that statute, not the Department of State's decision-making process. Simply put, Plaintiff's allegations—construing them in his favor—at best suggest that he is challenging an internal policy of the Secretary of State, which is far from the typical "final agency action" in APA cases. *See, e.g.*, *Kelerchian v. Bureau of Alcohol Tobacco Firearms & Explosives*, No. 20-3065, 2021 WL 2910934, at *4 (3d Cir. July 12, 2021) (allegation about "internal policy" was insufficient to establish final agency action); *Vigil v. FEMA*, No. 23-cv-00941-JB-JFR, 2024 WL 2404487, at *39 (D.N.M. May 23, 2024) (internal guidance did not constitute final agency action);[9] *cf. Colo. Health Facilities Rev. Council v. Dist. Ct. ex rel. City & Cnty. of Denver*, 689 P.2d 617, 621 (Colo. 1984) (finding no jurisdiction to review board of health's order that "did not bear any of the marks of a final agency decision," as it was "neither the issuance of a general regulation nor the

---

[8] "[D]istrict courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions *sua sponte* for a lack of subject-matter jurisdiction." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017).

[9] Where a provision of the federal APA parallels the State Administrative Procedure Act, Colorado courts consider federal precedent and other commentary on the federal counterpart. *Regular Route Common Carrier Conf. v. Pub. Utils. Comm'n*, 761 P.2d 737, 748 (Colo. 1988); *see also Roosevelt Tunnel, LLC v. Norton*, 89 P.3d 427, 429 (Colo. App. 2003) (relying in part on cases interpreting the meaning of "final agency action" under the federal APA).

determination of particular rights in an adjudication"). Indeed, in his Response, Plaintiff asserts that he "challenges an ongoing non-verification policy and not a single 2023 action," [Doc. 22 at 19], which also cuts against a finding that the policy constitutes a final agency action.

However, the Court is also mindful that the unusual nature of Plaintiff's state APA claim presents a question of state law that has not been briefed by the Parties. And the Court also recognizes that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). The Court may decline to address a subject matter jurisdiction issue "and dispose of a case on a 'threshold, nonmerits' issue" so long as "resolving the issue 'does not entail any assumption by the court of substantive law-declaring power.'" *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) (quoting *Sinochem*, 549 U.S. at 433, 436). Therefore, the Court turns to an alternative non-merits argument that is dispositive of Claim Five.

Relevant here, the State Administrative Procedure Act "does not create substantive legal rights on which a claim for relief can be based." *Romer v. Bd. of Cnty. Comm'rs*, 956 P.2d 566, 576 (Colo. 1998). It alone does not "confer upon [a plaintiff] standing to seek judicial review"; rather, it "simply addresses the procedures of review available once it is properly established that the dispute is justiciable pursuant to some other statutory grant." *Id.* at 577. In other words, to bring a claim under the state APA, a plaintiff must demonstrate an existing substantive legal right conferred "by statutory language, by the agency's rules and regulations, or by some constitutional command."

21

*Id.* at 576. "[S]ome other law must give rise to a cause of action under the APA." *Weld Cnty. Colo. Bd. of Cnty. Comm'rs v. Ryan*, 536 P.3d 1254, 1258 (Colo. 2023).

Defendants contend that Plaintiff "cites no statute, regulation, or constitutional command that supplies him a right to relief in federal court for purposes of his APA claim," so he fails to state an APA claim under Rule 12(b)(6). [Doc. 18 at 20]. The Court finds this argument is more properly characterized as an argument that Plaintiff lacks standing to bring his state APA claim. *See, e.g.*, *Neighbors Affected by Triple Creek v. Colo. Oil & Gas Conservation Comm'n*, No. 18CA0116, 2021 WL 12341240, at *5–6 (Colo. App. Apr. 1, 2021) (framing this issue as a standing issue); *Ryan*, 536 P.3d at 1258 (same). Plaintiff responds that his "Complaint alleges the non-verification policy violates C.R.S. § 7-90-314[(1)](b), which prohibits fraudulent filings, thus providing a statutory right to challenge non-compliance," which "satisf[ies] the requirements of *Romer*." [Doc. 22 at 22].

The Court is respectfully unpersuaded by Plaintiff's argument. To show that he has a substantive right upon which an APA claim may be based, Plaintiff must demonstrate that "an intent to protect [his] interest in avoiding the injury is explicit or fairly inferable from the statutory provisions under which the agency acts, or by demonstrating that the legislature expressly conferred on the plaintiff the right to seek judicial review of the agency decision." *Neighbors Affected by Triple Creek*, 2021 WL 12341240, at *5 (cleaned up); *see, e.g.*, *Ryan*, 536 P.3d at 1258 (Colorado Air Pollution Prevention and Control Act, which states that "[a]ny final order or determination by the division or the commission shall be subject to judicial review," provides the right to seek judicial review of a rule promulgated by the Colorado Air Quality Control Commission). Plaintiff's limited argument does not demonstrate that § 7-90-314 either expressly or implicitly confers the

right to seek judicial review of the "agency decision" he purports to challenge under the state APA.

To be sure, § 7-90-314 prohibits the act of "[i]ncluding an address in a document filed in the secretary of state's office under this part 3 without the consent of the owner of or occupant of the included address." § 7-90-314(1)(b). But this statute further provides that a person "affected by the filing of a document" that violates § 7-90-314(1)(b) "may submit a complaint to the secretary of state . . . alleging that the filing was made in violation of" the statute. § 7-90-314(2). The statute then contemplates that the Secretary of State will investigate the complaint and may refer the complaint to the Attorney General, § 7-90-314(3); the Attorney General will review the complaint and investigate further if necessary, § 7-90-314(4)(a); if a person requests a hearing, the Attorney General can then refer the complaint to an administrative law judge or decline to prosecute the complaint, § 7-90-314(4)(g)(I)–(II); and if the complaint is referred, the administrative law judge will making findings as to whether the statute was violated, § 7-90-314(4)(g)(IV); and the administrative law judge's decision "is final and subject to review by the court of appeals under" the Administrative Procedure Act, § 7-90-314(4)(g)(VII).

In summary, § 7-90-314 provides the right to challenge, through the state APA, an administrative law judge's final decision regarding whether a filing submitted to the Secretary of State violated the statute. It does *not* expressly or implicitly create a right to challenge the Secretary of State's internal document-review policy, or its "non-verification policy," as Plaintiff attempts to do here. And Plaintiff cites to no other statute, constitutional provision, or rule or regulation that permits him to raise a state APA claim to challenge Defendants' "non-verification policy." *See* [Doc. 22]. Therefore, Plaintiff has

23

not demonstrated a legally cognizable interest that he can assert under the APA, and he lacks standing to bring Claim Five.  The Motion to Dismiss is **GRANTED** as to Claim Five, and Claim Five is **DISMSISED without prejudice**.

## VI.    Commodity Exchange Act Claim:  Claim Seven

In Claim Seven, Plaintiff alleges that PBGME violated the Commodity Exchange Act "by engaging in fraudulent cryptocurrency transactions [and] misrepresenting investment legitimacy to Plaintiff and the class" and that Secretary Griswold, "through her deliberate non-verification policy . . ., willfully aided and abetted this violation by listing PBGME as a valid entity, inducing reliance and creating a state-created danger."  [Doc. 1 at ¶¶ 88–89].  Plaintiff "seeks injunctive relief under 7 U.S.C. § 25(a)(1) to end this policy's facilitation of CEA violations."  [*Id.* at ¶ 91].  He also seeks a declaration that "Defendants' non-verification policy violates . . . 7 U.S.C. § 25."  [*Id.* at 16].

To the extent Plaintiff seeks prospective injunctive or declaratory relief under this claim, the Court has already concluded that he lacks standing to seek this relief.[10]  *Supra* Section I.  The Court does not repeat this analysis here.

To the extent Claim Seven seeks money damages, Defendants argue that the claim should be dismissed because (1) the CEA "does not authorize a private cause of action against the Secretary of State in her official capacity"; and (2) the claim is barred by the Eleventh Amendment.  [Doc. 18 at 20].  Plaintiff does not respond to this argument,

---

[10] In addition, Defendants are correct in arguing that the CEA does not contemplate a private right of action for injunctive relief.  *See* [Doc. 18 at 23–24]; *see also* 7 U.S.C. § 25(a)(1) ("Any person . . . who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter *shall be liable for actual damages* . . . ." (emphasis added)); *id.* § 13a-1 (permitting the Commodity Futures Trading Commission to bring an action to enjoin violations of the CEA).

24

instead suggesting that the Court should construe his claim against Secretary Griswold as an individual-capacity claim.  [Doc. 22 at 22–23].  For the reasons explained above, *supra* Section II, the Court will not do so.

The Court agrees that Plaintiff's CEA claim for money damages against Secretary Griswold in her official capacity is barred by the Eleventh Amendment.  *Chilcoat*, 41 F.4th at 1213.  The Motion to Dismiss is **GRANTED** with respect to Claim Seven, and Claim Seven is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## VII.    Declaratory Judgment Act Claim:  Claim Six

Claim Six is purportedly asserted under the Declaratory Judgment Act.  [Doc. 1 at 15].  Defendants move to dismiss this claim, arguing that because Plaintiff has not asserted any claims over which this Court has jurisdiction, and because there is no independent basis for Claim Six, the claim must be dismissed.  [Doc. 18 at 24].  Plaintiff responds that Claim Six is "tied to the other claims in Plaintiff's Complaint" and is "jurisdictionally sound."  [Doc. 22 at 24].

"[T]he Declaratory Judgment Act does not provide an independent federal cause of action."  *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950)).  "It merely empowers a court '[i]n a case of actual controversy within its jurisdiction' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *Id.* (quoting 28 U.S.C. § 2201.  To maintain an action for a declaratory judgment, Plaintiff must assert a valid cause of action that "exists independent of any request for declaratory relief."  *Nero*, 2022 WL 14423872, at *2.  This Plaintiff cannot do, as his other six claims have all been

dismissed. *See Adams v. FedEx Ground Package Sys., Inc.*, 546 F. App'x 772, 777 (10th Cir. 2013) (finding that the plaintiff's declaratory judgment claim "fail[ed] because there [were] no rights left to be declared under her other failed claims"). Furthermore, the Court has already determined that Plaintiff lacks standing to assert a claim for prospective declaratory relief. *See* [Doc. 1 at 16]. The Motion to Dismiss is **GRANTED** with respect to Claim Six, which is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    The Motion to Dismiss [Doc. 18] is **GRANTED**;

(2)    Each of Plaintiff's claims is **DISMISSED without prejudice**;

(3)    Judgment shall enter in favor of Defendants and against Plaintiff;

(4)    Defendants are entitled to their costs under D.C.COLO.LCivR 54.1; and

(5)    The Clerk of Court shall **TERMINATE** this case.

DATED:  March 31, 2026                BY THE COURT:

_____
Nina Y. Wang
United States District Judge

26